November 20, 2023

**BY ECF**

Catherine O'Hagan Wolfe, Esq.
Clerk of the Court
United States Court of Appeals for the Second Circuit
40 Foley Square
New York, NY 10007

33 Whitehall Street
14th Floor
New York, NY 10004

**SCOTT A. MARTIN**
**PARTNER**

T: +1 646 357 1100
DD: +1 646 357 1195
E: smartin@hausfeld.com

Re: *PHHHOTO Inc. v. Meta Platforms, Inc., f/k/a Facebook, Inc.*, No. 23-0763

Dear Ms. Wolfe:

As requested by the Court, Plaintiff-Appellant Phhhoto Inc. ("Phhhoto") provides the citations below in further response to certain questions posed at the November 16, 2023 oral argument.

The panel asked whether the procedure that the Phhhoto CEO (Mr. Bennett) went through in October of 2017 to discover the suppression could have been done when the CEO discovered the drop in metrics in April of 2016. The answer is NO.

The panel also asked whether this was briefed to the district court. The briefing can be found at and around page 22 of Phhhoto's opposition memorandum in the court below, discussed with the related argument that there was no reason at that time to suspect anticompetitive conduct. *See* ECF No. 28, at 22-23. Specifically, this includes: "Bennett could not have done this in April 2016, when Instagram had begun to manipulate user feeds, because there was not even a Hypno account in existence at the time. Nor was there any reason to suspect that Meta was engaged in anticompetitive conduct." *Id.* at 22.

In order to show that Meta was treating Phhhoto's content differently from other content, there needed to be two large pools of actual users interested in the same kind of content, so that the comparison would be valid. In April 2016, there was only a pool of Phhhoto users. There was no second pool of other, similar users against which to compare. The second pool that the Phhhoto CEO used for comparison, Hypno users, did not start accumulating until later, in the fall of 2017 after Phhhoto shut down its operations. Prior to that time, the Hypno product was **not** an online application with online users. It was a camera platform for live events like wedding receptions. Am. Compl. ¶ 128 (A-127-28). The Phhhoto founders could not have created and did not create a second online application with online users prior to Phhhoto's shutdown. To have done so would have precipitated enormous ethical and financial issues with the venture capital fund investors in Phhhoto that expected Phhhoto to be the founders' focus, not some other application. In any case, there was no second pool of users with which to make a comparison in April 2016.

Finally, Judge Chin asked what other affirmative acts of concealment (beyond the 2016 press release) Meta made. In addition to the outstanding press release, the answer is that Meta, among other things, issued a second press release in 2018 which also continued to disclaim that Meta either hid posts or manipulated user feeds against competitors. *See* Am. Compl. ¶ 112 (A-122).

Respectfully submitted,

*/s/ Scott A. Martin*

Scott A. Martin

cc: Counsel of record (via ECF)